UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 2:24-CR-00080-DCLC-CRW |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL LEWIS PATRAM, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On August 13, 2024, the Grand Jury indicted Michael Louis Patram on two counts of possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). [Doc. 1]. Patram moved to dismiss the indictment arguing that § 922(g)(1) is unconstitutional as applied to him. [Doc. 17]. The Court set a hearing on July 15, 2025, pursuant to *United States v. Williams*¸ 113 F.4th 637 (6th Cir. 2024), to determine Patram's dangerousness and thus whether § 922(g)(1) is unconstitutional as applied to Patram. The Court finds that Patram has not met his burden to prove that he is not dangerous given his prior conviction for a violent offense – attempted aggravated sexual battery in violation of Tenn. Code Ann. §§ 39-12-101, 39-13-504. Accordingly, § 922(g)(1) is constitutional as applied to Patram and the motion to dismiss is **DENIED**.

### I. BACKGROUND

On April 16, 1999, Patram pled guilty to two counts of attempted aggravated sexual battery in Rutherford County Criminal Court in violation of Tenn. Code Ann. §§ 39-12-101, 39-13-504. [Docs. 17; 17-1]. The victim was under the age of 13 at the time of the offense. [Doc. 17]. He received a sentence of six years of imprisonment that was suspended to six years on supervised

probation and was required to register as a sex offender and submit to community supervision for life. *Id*.

Although Patram pled to attempt, the indictment for the underlying felonies alleged that Patram "unlawfully and knowingly did have sexual contact with [redacted], a person less than thirteen (13) years of age at the time of the commission of this offense, in violation of T.C.A. 39-13-504." [Doc. 17-2]. The affidavit of complaint [Doc. 29, pg. 12] includes explicit detail of the offenses in which the victim, a child under the age of 13, told officers that Patram had massaged her back, chest, inner thighs, and touched her vagina on two separate occasions in February and March 1998. Patram admitted to these actions during a police interview and said he had placed lotion on the victim for a rash but advised it "became more than medical." [Doc. 29, pg. 12]. The indictments followed, Patram entered a guilty plea on April 16, 1998, and he began serving six years of state probation. [Doc. 29].

The Tennessee Department of Correction's ("TDOC") records reflect that Patram exhibited violent tendencies during supervision. [Doc. 37].[1] The contact notes dated May 10, 1999, state

---

[1] The Government provided supplemental filings including details regarding Patram's history of supervision and his previous felony convictions for the Court to utilize in determining Patram's dangerousness. [Docs. 29, 37]. During the hearing, Defense counsel objected to certain statements as hearsay within Patram's probationary officer's contact notes from the TDOC records [Doc. 37]. It has been established that the Court may consider "any evidence of past convictions in the record, as well as other judicially noticeable information," *Williams*, 113 F.4th at 660, and the Court is not "confined to the fact of conviction alone, but may consider how an offense was committed." *United States v. Morton*, 123 F.4th 492, 499 (6th Cir. 2024). The Sixth Circuit, however, has not addressed whether courts may consider such hearsay evidence in the context of a *Williams* hearing and courts in this circuit are split on the issue. 113 F.4th at 660; *compare United States v. Johnson*, 764 F. Supp. 3d 566, 572 (E.D. Mich. Jan. 16, 2025) (declining to consider police reports because they contain "allegations of uncharged conduct, hearsay, and similar information whose reliability cannot be assumed"), *with United States v. Sykes*, No. 3:19-cr-60, 2025 WL 52737, at *2 n.3 (M.D. Tenn. Jan. 8, 2025) (considering a police report in a *Williams* challenge). The Court has not included nor considered the statements in the TDOC records that Defense counsel objects to in its dangerous determination because the Court's

2
Case 2:24-cr-00080-DCLC-CRW   Document 46   Filed 07/18/25   Page 2 of 10
PageID #: 187

that Patram called to let his probation officer know that he was in the VA hospital after a failed suicide attempt. [Doc. 37, pg. 8]. Patram was admitted to the VA hospital on May 8, 1999, for alcohol intoxication with suicidal/homicidal tendencies. [Doc. 37, pg. 7].

Two violations of probation were filed against Patram during his period of supervised probation, but the orders do not contain any details regarding the violations. [Doc. 18-1]. The first was passed for review and then later dismissed on October 25, 1999. *Id.* An agreed order of revocation was entered for the second violation on December 11, 2001. *Id.*

Regarding the instant offense, as part of a compliance check for the sex offender registry, investigators with the Johnson City Police Department responded to Patram's residence on July 24, 2024. [Doc. 18, pg. 1]. The officers asked Patram if he would provide consent to search his residence, and he signed a form providing consent to search. *Id.* The officers observed what appeared to be a long rifle near Patram's bed – which Patram indicated was a pellet rifle. *Id.* The officers then asked Patram if there were any weapons in the room and Patram replied that there was a .22 caliber pistol present. *Id.* When asked where it was located, Patram reached over to the bed and revealed the .22 caliber long rifle pistol that was under a pillow. *Id.* pgs. 1–2. The officers then Mirandized Patram and asked if they could continue searching – to which Patram agreed. *Id.* pg. 2. They located a locked safe and Patram stated it contained ammunition, provided the code, and the officers found two boxes containing a total of 99 .22 caliber long rifle cartridges and a holster. *Id.*

The Grand Jury indicted Patram on two counts of possessing a firearm and ammunition as a felon in violation of 18 U.S.C. § 922(g)(1). [Doc. 1]. Patram moved to dismiss the indictment,

---

reasoning does not hinge on this supplemental filing. The remainder of Patram's record is sufficient to make this determination.

arguing that § 922(g)(1) is unconstitutional as applied to him and preserving his arguments for the record that § 922(g)(1) is unconstitutional on its face.[2] [Doc. 17]. Patram also requested a hearing under *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024) for the opportunity to prove that he is not currently dangerous and therefore § 922(g)(1) as applied to him violates the Second Amendment. [Doc. 17]. The Government responded and provided supplemental filings regarding Patram's prior convictions and his term of supervision for the Court's consideration. [Docs. 18; 29; 37]. The Court set a hearing for July 15, 2025, and heard oral argument. [Docs. 20, 30]. Having been fully briefed and argued, the matter is ripe for resolution.

## II. LEGAL STANDARD

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Second Amendment provides an individual right "to keep, for 'lawful purposes,' the kinds of weapons in common usage, like those used for self-defense." *Williams*, 113 F.4th at 643 (citing *District of Columbia v. Heller*, 554 U.S. 570, 625, 628 (2008)). The right is not unqualified as courts have historically upheld statutes prohibiting felons from possessing firearms as facially constitutional. *See Kanter v. Barr*, 919 F.3d 437, 442 (7th Cir. 2019) (collecting cases).

In *Heller*, the Supreme Court held that the Second Amendment protects "an individual right to keep and bear arms" that is "unconnected with militia service." 554 U.S. at 595, 605. The

---

[2] As Patram recognizes by preserving his arguments for the record, the Sixth Circuit has already concluded § 922(g)(1) is not susceptible to a facial challenge because "most applications of § 922(g)(1) are constitutional" such that a defendant could not demonstrate that "no set of circumstances exists under which the Act would be valid." *Williams*, 113 F.4th at 643, 657. This Court need not discuss Patram's arguments that § 922(g)(1) should be found unconstitutional on its face as *Williams* binds the Court on any facial challenge to § 922(g)(1).

Court went on to state that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 626. Two years later, in *McDonald v. City of Chicago*, the Court "repeat[ed] [its] assurances" that felon dispossession laws remain valid. 561 U.S. 742, 786 (2010) (plurality opinion).

In *New York State Rifle & Pistol Association v. Bruen*, the Supreme Court established a test for evaluating whether a firearm regulation violates the Second Amendment. 597 U.S. 1 (2022). A court first asks whether the "Second Amendment's plain text covers an individual's conduct." *Id.* at 24. If so, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* The modern regulation need not have a "historical twin" but must be "relevantly similar" to historical regulations. *Id.* at 28–30.

Then, in *United States v. Rahimi*, 602 U.S. 680 (2024), the Court considered a challenge to 18 U.S.C. § 922(g)(8), which disarms certain people subject to domestic violence restraining orders. The opinion analogized to "surety and going armed" laws, both of which provided for disarmament of those "found to threaten the physical safety of another." *Rahimi*, 602 U.S. at 693–98. Thus, the Court concluded § 922(g)(8) was consistent with the Nation's historical tradition of firearm regulation and reiterated that felon-in-possession prohibitions are "presumptively lawful." *Id.* at 699.

It was based on this framework that the Sixth Circuit addressed a challenge to § 922(g)(1), in *United States v. Williams* which it had previously held was constitutional. 113 F. 4th 637 (6th Cir. 2024). The Sixth Circuit reasoned that its prior decisions were superseded by *Bruen* and *Rahimi*. *Id.* at 646. The Court held that § 922(g)(1) is "constitutional on its face and as applied to dangerous people." *Id.* at 662–63. But "each member of that disarmed group" must have "an

opportunity to make an individualized showing that he himself is not actually dangerous." *Id.* at 663. The Sixth Circuit left the dangerousness determination to the district courts and to assist in the determination, the Sixth Circuit grouped felons' prior convictions into three categories as "certain categories of past convictions are highly probative of dangerousness, while others are less so." *Id.* at 658.

The first category includes convictions for "crimes against the person," like murder, rape, assault, and robbery. *Id.* Whether offenses in this category are dispositive of dangerousness is an open question, but either way, "there is little debate that violent crimes are at least strong evidence that an individual is dangerous, if not totally dispositive on the question." *Id.*

The second category includes crimes that may not be "strictly crimes against the person" but could "nonetheless pose a significant threat of danger." *Id.* at 659. "These crimes do not always involve an immediate and direct threat of violence against a particular person" but the Sixth Circuit provided examples such as drug trafficking and burglary because they pose a danger to the community often lead to violence. *Id.* at 659. An individual convicted of felonies in either of these first two categories "will have a very difficult time, to say the least, of showing he is not dangerous." *Id.* at 663.

The third category includes crimes "that pose no threat of physical danger, like mail fraud, tax fraud, or making false statements." *Id.* at 663. These crimes often "cause no physical harm to another person or the community." *Id.* at 659. The court opined that "district courts will have no trouble concluding that many of these crimes don't make a person dangerous." *Id.*

Courts "should make fact-specific dangerousness determinations after taking account of the unique circumstances of the individual, including details of his specific conviction." *Id.* at 663. In evaluating a defendant's dangerousness, courts must "focus on each individual's specific

characteristics" including "the individual's entire criminal record, not just the predicate offense." *Id.* at 657. Courts may also "wish to consider information beyond criminal convictions," including any other "judicially noticeable information," *id.* at 658 n.12, 660, and they are not "confined to the fact of conviction alone, but may consider how an offense was committed," *United States v. Morton*, 123 F.4th 492, 499 (6th Cir. 2024).

### III. ANALYSIS

The issue before the Court is whether Patram can demonstrate that he is no longer dangerous. If he can meet that burden, *Williams* dictates that the Court must find § 922(g)(1) is unconstitutional as applied to him, and the indictment must be dismissed. 113 F. 4th at 662–63.

Patram has however failed to meet his burden and has not sufficiently demonstrated that he is no longer dangerous. Patram was convicted of attempted aggravated sexual battery under Tenn. Code Ann. §§ 39-12-101, 39-13-504. Put simply, even an *attempted* aggravated sexual battery of a child below the age of 13 is a violent crime and indicative of dangerousness. The statutes Patram is convicted of violating are categorized as "violent sexual offense(s)" under the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act of 2004 ("SORVTA"). Tenn. Code Ann. §§ 40-39-201–40-39-218. Patram is registered as an "offender against children" the definition of which includes any "violent sexual offender." Tenn. Code Ann. § 40-39-202 (10). A "violent sexual offender" means any person who has been convicted of a "violent sexual offense" which includes criminal attempt (Tenn. Code Ann. § 39-12-101), of aggravated sexual battery (Tenn. Code Ann. § 39-13-504). Tenn. Code Ann. § 40-39-202 (31). Thus, by very definition under SORVTA, Patram is a *violent* sexual offender, and his prior convictions fall within the first category of crimes under *Williams* for which "dangerousness [is] self-evident." 113 F.4th at 660; *see also United States v. Gaytan*, 226 Fed.

Appx. 519, 521 (6th Cir. 2007) (finding that in the sentencing context "[s]ex crimes against children qualify as crimes of violence, regardless of whether the use of force is an element"). Furthermore, as noted by the United States, Patram's requirements to register as a sex offender and submit to community supervision for life are additional evidence that he is considered a danger to the community as recognized by the state legislature.

Beyond Patram's convictions, his actions while on supervision are indicative of dangerousness. While on supervision in 1999, Patram was admitted to the VA hospital for suicidal and homicidal tendencies. [Doc. 37, pg. 6]. And, although the parties could not locate any details regarding these offenses, two violations of probation were filed against Patram while under state supervised probation. [Doc. 18-1].

Patram's argument that his prior convictions should be given little weight in the Court's dangerousness decision because they are over 25 years old falls flat. To begin with, "the consideration of older convictions in the determination of a defendant's dangerousness is not precluded." *United States v. Smith* (*Smith II*), No. 3:22-CR-57-TAV-DCP, 2024 WL 5040930, at *6 (E.D. Tenn. Dec. 9, 2024). As the Sixth Circuit instructs, courts should "evaluate a defendant's entire criminal record[,]" and defendants who have committed crimes "against the body of another human being" will have a difficult time showing that they are not dangerous. *Williams*, 113 F.4th at 663. Although Patram cites to several decisions in which courts have considered the age of a defendant's conviction, many district courts have found "older, violent convictions on their own to be sufficient to demonstrate dangerousness under *Williams*." *Smith II*, 2024 WL 5040930, at *5.[3] Patram's convictions for attempted sexual battery to show dangerousness are not diminished

---

[3] The court in *Smith II* surveyed relevant case law regarding the issue of prior conviction age:

simply because they took place over 25 years ago especially given their particularly heinous facts involving repeated sexual abuse of a child. *See* [Doc. 29, pg. 12] (detailing the victim's allegations of abuse and Patram's admissions).

Patram is up against an "extremely high" standard to prove that he is no longer dangerous under *Williams* as his violent convictions are "at least strong evidence that an individual is dangerous, if not totally dispositive on the question." 113 F.4th at 658. Although it has not been established that prior convictions for attempted aggravated sexual battery are dispositive on this issue, Patram failed to present evidence in his motion or at the *Williams* hearing that he has been rehabilitated and is no longer a danger to the community because his convictions were over 25 years ago, and he has not been convicted of another crime since then. While that is true, the United

---

*See United States v. Lawson*, No. 3:23 CR 627, 2024 WL 4443765, at *2 (N.D. Ohio Oct. 8, 2024) (concluding that the defendant's 1994 rape conviction, even though the defendant entered an *Alford* plea to the charge, was sufficient to demonstrate dangerousness); *United States v. Quezada*, No. 5:22-cr-327, 2024 WL 3849923, at *1, *7 (N.D. Ohio Aug. 16, 2024) (determining that because the defendant had prior convictions for reckless homicide in 2010 and drug distribution in 2011, the defendant could not demonstrate that § 922(g)(1) was unconstitutional as applied to him); *United States v. McQueen*, No. 24-20136, 2024 WL 3331629, at *1, *6 (E.D. Mich. July 8, 2024) (finding that the defendant's past crimes of carjacking, armed robbery, and illegal firearm possession, for which the defendant was convicted in 2007, demonstrate why § 922(g)(1) survives an as-applied challenge); *United States v. El Bey*, No.1:21-cr-110, 2024 WL 22701, at *1, *4 (S.D. Ohio Jan. 2, 2024) (relying on the defendant's 1999 conviction for felonious assault and defendant's 2007 conviction for felonious kidnapping and felonious assault in determining that § 922(g)(1) was constitutional as applied to the defendant); *see also United States v. Vaughn*, No. 23-5790, 2024 WL 4615853, at *1–*2 (6th Cir. Oct. 30, 2024) (citing *Williams*, 113 F.4th at 662) (stating that the defendant's conviction for aggravated robbery, which occurred in 2002, is "highly probative, and alone, would almost certainly be sufficient to conclude that the defendant presented a danger to the public such that they could be constitutionally disarmed").

2024 WL 5040930, at *5.

States noted that during its investigation, it discovered that TDOC has mistakenly not been supervising Patram as he was previously ordered by the state criminal court to submit to community supervision for life pursuant to Tenn. Code Ann. § 39-13-524. [Doc. 17-1]. While this is not Patram's fault, the Court has no independent information about whether Patram has been compliant with his terms of supervision.

To show he is no longer dangerous, Patram called his neighbor David Cox. Cox testified that he has been Patram's neighbor for five years and sees him about once a week. He described Patram as "a real good man," "real quiet," and that he does not consider Patram to be a dangerous person. Cox's testimony that Patram is "like a good neighbor" and his friend does not overcome the high burden Patram faces to demonstrate that he is no longer dangerous given his past convictions. And while his testimony was genuine and credible, it simply does not add any meaningful insight into the dangerousness inquiry facing the Court.

IV. CONCLUSION

For the foregoing reasons, Patram has failed to meet his "extremely heavy" burden to prove he is not dangerous. *Williams*, 113 F. 4th at 658. Patram's prior convictions and the circumstances of those offenses for attempted aggravated assault against a child under the age of 13 fall within the category of "dangerous and violent crimes like murder, rape, assault, and robbery," that are against the body of a person and are themselves indicative of dangerousness. *Id.* As a result, § 922(g)(1) is constitutional as applied to Patram and he may be lawfully disarmed. Accordingly, Patram's Motion to Dismiss Indictment [Doc. 17] is **DENIED**.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge

10
Case 2:24-cr-00080-DCLC-CRW  Document 46  Filed 07/18/25  Page 10 of 10
PageID #: 195